[No. 50076-2.   En Banc.   May 8, 1986.]

PAUL D. HEINEMANN, *Respondent,* v. WHITMAN COUNTY, ET AL, *Petitioners.*

*James H. Kaufman, Prosecuting Attorney,* and *April D. McComb, Chief Deputy,* for petitioners.

*Aitken, Schauble, Patrick & Neill,* by *Bruce A. Charawell,* for respondent.

*Leo Poort* and *M. Colleen Barrett* on behalf of Washington Association of Sheriffs and Police Chiefs, amici curiae for petitioners.

BRACHTENBACH, J.—The issue is what warnings must be given to a driver prior to being requested to perform field sobriety tests as a driver suspected of being under the influence of alcohol or drugs, RCW 46.61.502, and prior to his or her formal arrest for driving while under the influence. The Superior Court held that the defendant should have been advised of his right to counsel and suppressed the evidence of the field sobriety tests. We reverse.

Just after 1 a.m. on November 4, 1982, a Whitman County deputy sheriff observed defendant leave a tavern and cross a street toward a parked vehicle. Defendant was observed staggering and talking loudly with a companion as he walked. When defendant drove away, the deputy followed and paced defendant's vehicle at 46 to 48 m.p.h. in a

30 m.p.h. speed zone. Defendant's vehicle weaved within its lane of travel, crossed the center line twice within a 2–block distance, and then made a very wide sweeping turn onto a side street, crossing into the other lane of travel as it turned. The vehicle was then driven into the private driveway of defendant's residence.

With the intention of determining whether the defendant had been driving while intoxicated, the deputy turned on his emergency lights and pulled into the driveway behind the defendant. The deputy later testified that, in his view, from the point that the emergency lights were activated defendant was not free to leave. However, the deputy did not communicate his intentions to the defendant.

Defendant got out of his vehicle and walked toward the deputy's patrol car. He appeared to be unsteady, stumbling slightly and staggering. When the two men met, the deputy noticed that the defendant smelled strongly of alcohol, his eyes were watery and bloodshot, and his general demeanor suggested that he was intoxicated. Defendant had difficulty finding his driver's license and removing it from its plastic cover.

The deputy then asked defendant to perform field sobriety tests. Had defendant refused to perform the tests, the deputy would have placed him under arrest. Defendant performed the tests, but not to the deputy's satisfaction. The deputy, therefore, concluded that he had probable cause to arrest the defendant for driving while intoxicated and at the completion of the tests he arrested defendant.

Defendant was transported to the sheriff's office where he was advised of his *Miranda* rights. At the conclusion of a Breathalyzer test, the results of which are not at issue, defendant was cited for driving under the influence of intoxicating liquor, RCW 46.61.502.

The District Court held a hearing on defendant's motion to dismiss the case with prejudice, or in the alternative, to suppress evidence. The court heard the above evidence and concluded that the case should not be dismissed and that no evidence should be suppressed. On review of the District

Court's decision, the Superior Court concluded that defendant should have been advised of his right to counsel before the sobriety tests and, therefore, the suppression of the evidence obtained in the interval between the time of probable cause and detention and the time of formal arrest and advisement of rights is the appropriate remedy.

We granted direct discretionary review of the Superior Court's decision.

The in–the–field investigation of a suspected driver under the influence creates a difficult situation. The officer attempts to remove the driver under the influence from the roads as quickly as possible according to set guidelines. The driver may attempt to cooperate with the police as much as necessary while trying to protect his or her right to privacy and right against self–incrimination. The remaining driving public wants both their roads free from drunk or drugged drivers *and* their individual right of privacy protected. We are given the task of setting guidelines for the officer that must be realistic and effective in dealing with suspected drivers under the influence while maintaining constitutional privacy rights for the individual on Washington roads.

The principles by which we are bound are found in constitutional law, common law and court–made rule. In our search for a balanced solution we consider: (1) the Sixth Amendment and Const. art. 1, § 22 (amend. 10); (2) *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); (3) JCrR 2.11; and (4) the Fourth Amendment and Const. art. 1, § 7. While considering these bases for suppression of the field sobriety test evidence, we remain constantly attendant to the particularities of the in–field environment. We seek to protect the officer, the public, and the suspect driver while avoiding a full blown trial and constitutional debate on the side of the road.

## I

First, the Sixth Amendment or Const. art. 1, § 22 (amend. 10) do not provide a basis for suppression of the

field sobriety test results in this case. It is well settled that an accused has a Sixth Amendment right to counsel at any critical stage in a criminal prosecution. *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). However, we have recently reaffirmed that the Sixth Amendment right attaches only when formal judicial criminal proceedings have been initiated against a defendant. *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984); *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 675 P.2d 599 (1984). It is only at that point that the government has committed itself to prosecute and "that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois,* 406 U.S. 682, 689–90, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972).

In *Tacoma v. Heater, supra,* the court found that a critical stage was reached immediately *after* the police officers had arrested the defendant, conducted field sobriety tests, interrogated him, and charged him with an offense involving the element of intoxication. In *State ex rel. Juckett v. Evergreen Dist. Court, supra,* the Sixth Amendment right to counsel was held not to apply to a person arrested for driving while intoxicated until a critical stage is reached *after* a citation is issued. While *Miranda* protections may apply before a citation is issued and formal charges brought in order to protect the defendant against self–incrimination, it is only at a critical stage that the Sixth Amendment and Const. art. 1, § 22 (amend. 10) right to counsel is provided in order to ensure the effective preservation and preparation of defenses to the charges.

The record in the present case reveals that defendant had neither been arrested nor received a citation at the time of the field sobriety test. The "criminal prosecution" to which the Sixth Amendment guaranties are applicable had not yet commenced. *Juckett,* at 830.

## II

■ Second, the protections afforded the United States

Constitution's Fifth and Sixth Amendment rights to counsel by *Miranda v. Arizona, supra,* cannot be the basis for suppression of the field sobriety test results in this case. *Miranda* holds that if certain procedures, including the advisement of the right to counsel, are not followed before the police interrogate a suspect who is in custody, the testimonial evidence that they receive from the suspect cannot be used in trial against him. We have previously held that the application of the *Miranda* protections are limited to situations in which the accused is compelled to make a testimonial communication and do not apply to situations in which the accused is the source of real or physical evidence. *See State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982); *Mercer Island v. Walker,* 76 Wn.2d 607, 458 P.2d 274 (1969); *State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967). In *Mercer Island,* at 612, we specifically addressed the field sobriety test situation and found the performance of the tests to be nontestimonial in nature. We have also previously addressed defendant's argument that Const. art. 1, § 9, the equivalent to the Fifth Amendment, should be read more broadly so as to encompass the performance of field sobriety tests. Such an interpretation was rejected in *State v. Moore,* 79 Wn.2d 51, 56–57, 483 P.2d 630 (1971). Therefore, defendant's right to counsel prior to submitting to field sobriety tests is not found under a strict analysis under *Miranda v. Arizona, supra.*

### III

Third, JCrR 2.11(c) does not provide a basis for suppression of the field sobriety tests results in this case. JCrR 2.11(c) provides:

(1) When a person is taken into custody he shall immediately be advised of his right to counsel. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge.

(2) At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone,

the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer.

JCrR 2.11 extends the right to counsel to every defendant in criminal proceedings for offenses punishable by loss of liberty who has his case tried in a court of limited jurisdiction. JCrR 2.11(c) appears to have been written both to effectuate the United States Supreme Court's decision in *Miranda* and to ensure that defendants will be afforded the right to counsel at all critical stages of the proceedings. The court rule, however, goes beyond the requirements of the constitution. *Miranda* rights need be given only if a suspect who is in custody is going to be interrogated. The Sixth Amendment right to counsel attaches only if judicial proceedings have been initiated. Under JCrR 2.11(c), however, the defendant must be advised of his right to counsel *immediately* when he has been taken into custody.

As the Superior Court construed this rule it requires advisement of rights at the time the detaining officer has probable cause to arrest the individual for a traffic violation. The court found that custody had occurred at that time and that an officer who has sufficient basis to issue a citation cannot artificially postpone the time at which an individual has the right to counsel by simply failing to make an arrest.

■ JCrR 2.11 "shall be construed to secure the just, speedy, and inexpensive determination of every action." JAR 2. As author of JCrR 2.11, this court is in a position to reveal the actual meaning which was sought to be conveyed. However, in the past, we have approached the court rules as though they had been drafted by the Legislature and have given the words their ordinary meaning, reading the language as a whole and seeking to give effect to all of it. *State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 585 P.2d 1177 (1978).

JCrR 2.11(c) must be read in relation to JCrR 2.11(b). While JCrR 2.11(c) specifies at what point the defendant must be advised of his right to counsel, JCrR 2.11(b) speci-

fies at what point the right to counsel "shall accrue". JCrR 2.11(b)(1) provides that the "right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest." In some cases, where a defendant is not detained in any manner until after formal arrest or an appearance before a magistrate, it could be argued that "custody" is not the event which triggers the accrual of the right to counsel under JCrR 2.11(b). However, the in–field sobriety test situation is peculiar in that the driver has not been formally charged nor brought before a magistrate. If the right to counsel is to accrue under JCrR 2.11(b)(1) it will be done on the basis that the detention during the tests is determined to constitute "custody". Therefore, the definition of "custody" determines when both JCrR 2.11(b) and (c) are triggered.

■■ A determination of the meaning of "custody" as used in JCrR 2.11 is facilitated by an analysis of when custody occurs in the *Miranda* context. This analysis is relevant only to when the right to counsel exists under JCrR 2.11. As previously discussed in part II, *Miranda* itself does not provide such a right in the field sobriety test, nontestimonial situation.

Washington courts have long recognized that the primary concern of the United States Supreme Court in *Miranda* was with the potentiality of compulsion inherent in in-custody interrogation. *State v. Creach*, 77 Wn.2d 194, 197, 461 P.2d 329 (1969). In *Creach*, this court emphasized the noncoercive, routine investigatory nature of questioning when it found that no *Miranda* warnings were needed prior to the questioning of a theft suspect outside of a public hotel. The court held that there was no evidence during the detention of overbearing or overzealous police officers and that until he was asked to enter the police car, the defendant had no reasonable basis to believe he was under restraint. *Creach*, at 199. Although the court relied on the lack of coercive circumstances, it noted that once an investigating officer has probable cause to believe that the per-

son has committed an offense, the officer cannot be expected to permit the suspect to leave his presence and at that point interrogation becomes custodial under *Miranda*. *Creach,* at 198. For this proposition the court relied on cases from other jurisdictions which treated the presence of probable cause, together with previous questioning, as an objective indicator that defendant, as a reasonable person, could believe that he was not free to depart and was, therefore, in custody. *See People v. Ceccone,* 260 Cal. App. 2d 886, 67 Cal. Rptr. 499 (1968).

A few years later the Court of Appeals applied an analysis similar to that used in *Creach. State v. Darnell,* 8 Wn. App. 627, 508 P.2d 613, *cert. denied,* 414 U.S. 1112 (1973). In determining whether a detention was custodial, the *Darnell* court found that

> [t]he existence of adequate grounds to arrest or give a citation for minor traffic violations does not necessarily present a situation of compulsive in–custody interrogation or deprivation of freedom necessitating *Miranda* warnings.

*Darnell,* at 629. The court went on to hold that once the investigation focused on the defendant specifically for the crime charged, *Miranda* applied to any statements defendant might make during the subsequent field sobriety tests. *Darnell,* at 629. The *Darnell* court, like the *Creach* court, was not concerned about the existence of probable cause in a factual vacuum. The *Creach* court considered probable cause an objective indicator that the defendant could reasonably believe he was not free to depart and, therefore, was subject to possible coercion; the *Darnell* court worried that once probable cause existed, the officers might focus on investigation of a particular crime while deceiving the defendant with questions of a general investigatory nature, hoping to elicit statements of the particular crime.

In *State v. Hilliard,* 89 Wn.2d 430, 433, 573 P.2d 22 (1977), these two rationales for *Miranda,* coercion prevention and deception prevention, were considered when we found that *Miranda* warnings were not necessary where

defendant was stopped and questioned on the street on the basis of reasonable suspicion of involvement in criminal activity and was told that he would be allowed to go if his story checked out. Relying on *State v. Creach, supra,* the *Hilliard* court held that the questioning of the defendant was during the course of a routine investigation, before the existence of probable cause to arrest and, therefore, not during a custodial interrogation. The coercive aspect of the stop was dissipated by the fact that defendant was told he would be free to go after his responses to questions checked out. This indicated to defendant that the officers were only suspicious of his activities; that this was a routine investigation and that they had not decided to arrest him. The nondeceptive aspect of the stop was discussed by the *Hilliard* court when it determined that the questioning was only routine and based only on reasonable suspicions. *Hilliard,* at 435–36.

This court in *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979) also discussed the concerns of coercion and deception in a case in which the defendant was being routinely and voluntarily interviewed as a witness to a crime. The court, relying on the lack of probable cause to arrest the defendant, on the routine and general investigatory procedure followed and on the fact that the defendant went voluntarily to the police station as a witness, held that the interrogation was noncustodial and, therefore, *Miranda* warnings were not necessary. *Green,* at 437; *accord, State v. Dictado,* 102 Wn.2d 277, 291–92, 687 P.2d 172 (1984). Once again the lack of probable cause was relevant to both rationales for the *Miranda* rule. Because the police lacked probable cause to believe that the defendant was the murderer, and were questioning him as a material witness, the objective indications were that the defendant, as a reasonable person, would not have felt deprived of his freedom or coerced in any manner. Because the police lacked probable cause and were clearly only questioning him as a material witness, no deceptive purposes existed in their questioning.

Upon reconsideration of *State v. Green, supra,* Justice

Utter reemphasized that probable cause is one factor providing objectively verifiable evidence that the interrogated individual was not free to go. *State v. Green,* 94 Wn.2d 216, 238, 616 P.2d 628 (1980) (Utter, J., concurring). This objectively verifiable evidence is relevant to the issue of whether the defendant reasonably believed he was not free to go and was, therefore, in danger of being subjected to coercive interrogation. Because it is the only objective indication of the officer's intentions, probable cause is even more relevant to the issue of whether the interrogating officers had a deceptive purpose to their questioning.

Washington courts, therefore, have in the past enunciated two rationales for recognizing a custodial situation requiring *Miranda* warnings: (1) to protect the individual from the potentiality of compulsion or coercion inherent in in-custody interrogation, and (2) to protect the individual from deceptive practices of the interrogation. Again, the existence of probable cause is relevant both as an objective indication of the reasonableness of defendant's belief that he was in custody and subject to coercion and as an indication that the officers' interrogation might turn from one with a general investigatory purpose to one with a deceptive purpose of eliciting statements about the probable cause crime.

The United States Supreme Court recently reiterated that the main thrust of *Miranda* was to address the "problem of how the privilege against compelled self-incrimination guaranteed by the Fifth Amendment could be protected from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." *Berkemer v. McCarty,* 468 U.S. 420, 428, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984). In a factual setting very similar to the one at bar, the Court considered only one of the concerns expressed by Washington courts. In *Berkemer,* an officer stopped respondent McCarty's car after he had observed it weaving in and out of its lane. When McCarty got out of his car he had difficulty standing. The officer decided at that point to arrest McCarty, but did not

announce this intention. Instead, the officer asked McCarty to perform a field sobriety test commonly called the "balancing test". McCarty could not do so without falling. The officer then asked McCarty whether he had been using intoxicants. McCarty, in slurred speech which the officer had difficulty understanding, admitted drinking two beers and smoking several marijuana cigarettes. At that point the officer arrested McCarty and took him to jail. At no time during this sequence was McCarty given *Miranda* warnings.

The Supreme Court held that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of *Miranda*:

> [W]e reject the contention that the initial stop of respondent's car, by itself, rendered him "in custody." And respondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. . . . Although [the trooper] apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, [the trooper] never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

*Berkemer,* at 441–42. The Court concluded that McCarty was not in custody until he was formally arrested. Consequently, the statements he had made prior to that point were admissible against him. In holding that McCarty was not in custody because he was not subjected to restraints comparable to those associated with a formal arrest, the Court concluded that McCarty, as a reasonable man, would not have understood his situation to be custodial and, therefore, would not have felt coerced. The Court rejected the existence of probable cause as a factor in the determination of custody and in so doing it reaffirmed that its focus was on the possibility of coercion alone and not on

the possibility of deception. *Berkemer,* at 435 n.22. Under its analysis the Court looked solely to the surrounding circumstances and found the restraints insufficient to require concern for the possibility of coercion.

The *Berkemer* decision is important to our analysis of the coercive aspects of a detention. We, too, hold that a request for the performance of field sobriety tests during a routine traffic stop does not *alone* indicate that the motorist would feel subjected to coercive restraints comparable to those associated with a formal arrest. We do, however, note that our additional concern for the deceptive nature of a custodial interrogation requires additional analysis in determining whether an interrogation would be custodial.

As previously indicated, in past decisions we have expressed our concern that not only must the pre–*Miranda* questioning be done in a noncoercive manner, but it must also be done for nondeceptive purposes. In the field sobriety test situation, the possibility for deception is decreased due to the fact that those specific tests are usable only for a sobriety determination and anyone asked to perform them would know immediately what the officer's suspicions were. Even where the detaining officer has probable cause to believe the suspect is guilty of driving while under the influence and requests the sobriety tests to double check his beliefs, the suspect cannot be deceived into believing the tests were for anything but the probable cause crime. The field sobriety tests are always used for the determination of sobriety, regardless of whether probable cause or reasonable suspicion of intoxication exists. Therefore, the situation in which the officer investigates the probable cause crime while pretending to investigate a different crime does not arise and the concerns which would trigger a finding of custody for *Miranda* purposes also do not arise.

In sum, our concerns for the coercive and deceptive aspects of a detention are lessened in the situation of field sobriety testing. We, therefore, hold that custody does not exist so as to require the traditional *Miranda* warnings.

## IV

To summarize, defendant has failed to prove any basis for the suppression of the field sobriety test results in this case. The Sixth Amendment and Const. art. 1, § 22 (amend. 10) protections did not apply until after formal citation issuance; the *Miranda* protections are inapplicable to this nontestimonial situation; custody for purposes of JCrR 2.11 did not arise until after the performance of the tests; and the seizure and questioning were reasonable under the Fourth Amendment and Const. art. 1, § 7. Measured by constitutionally permissible conduct, the officer's actions were proper and the field sobriety test results are admissible.

We reverse the Superior Court and remand to the trial court for proceedings consistent with this opinion.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.