# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69613-1-I |
| | ) | |
| Respondent, | ) | ORDER DENYING MOTION |
| | ) | FOR RECONSIDERATION, |
| v. | ) | WITHDRAWING OPINION, |
| | ) | AND SUBSTITUTING |
| MARK TRACY MECHAM, | ) | OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

The appellant, Mark Mecham, has filed a motion for reconsideration of the published opinion filed on April 21, 2014. The State has filed a response. The court has determined that said motion should be denied and that the opinion filed on April 21, 2014 shall be withdrawn and a substitute published opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; it is further

ORDERED that the opinion filed on April 21, 2014, is withdrawn and a substitute published opinion shall be filed.

DATED this 23rd day of June, 2014.

_Appelwick, J._

_Leach, J._          _Becker, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                                 )
                Respondent, )
                                 )
          v. )
                                 )
MARK TRACY MECHAM, )
                                 )
                Appellant. )
                                 )

No. 69613-1-I

DIVISION ONE

PUBLISHED OPINION

FILED: June 23, 2014

APPELWICK, J. — At Mecham's trial for felony driving under the influence, the State introduced Mecham's refusal to perform a field sobriety test as substantive evidence of his guilt. Mecham argues that the State impermissibly penalized him for exercising his constitutional right to refuse consent to a field sobriety test. Mecham also makes a confrontation clause challenge to the admission of a certification of mailing on his license revocation order. We affirm.

## FACTS

On May 15, 2011, Officer Scott Campbell observed Mark Mecham driving in Bellevue, Washington. Campbell pulled Mecham over after he ran a random license check and discovered an outstanding warrant. He did not see Mecham drive unsafely or commit any traffic infractions.

While arresting Mecham, Officer Campbell noticed that Mecham appeared intoxicated. Campbell observed that Mecham's breath smelled of alcohol, his movements were sluggish, and his speech was slurred and repetitive.

Campbell asked Mecham to perform a voluntary field sobriety test. The standard field sobriety test has three components. First, it involves the horizontal gaze nystagmus test, in which the person must follow a moving object with the eyes while the officer looks for involuntary jerking movements. Second, it includes the "walk and turn," where the person must take several heel-to-toe steps on a line. And, finally, it involves standing on one leg while counting out loud.

Mecham declined to perform the field sobriety test.

Campbell noticed that Mecham's car doors were open and unlocked, with the keys still in the ignition, so he offered to secure Mecham's car. Mecham told Campbell just to shut the doors, but not to go in his car. When Campbell approached to shut the doors, he noticed an open beer can with a straw in it behind the passenger seat.

Campbell transported Mecham to the Bellevue booking facility. Once there, he read Mecham the implied consent warnings and asked Mecham to submit to a breath test. Mecham refused.

At the police station, Officer Darrell Moore helped Campbell draft an application for a search warrant to test Mecham's blood alcohol content. Officer Moore also smelled intoxicants on Mecham's breath. He noticed that Mecham's speech was slurred, his eyes were glazed and bloodshot, and his pupils were dilated despite the bright room. Based on these observations, Moore also believed Mecham to be impaired.

2

Once they obtained a warrant, the officers took Mecham to Overlake Hospital for a blood draw. A lab assistant drew Mecham's blood approximately three hours after his arrest.

A forensic toxicologist, Rebecca Flaherty, analyzed Mecham's blood. She reported that his blood alcohol content was 0.05 grams per 100 milliliters (g/100 ml). She testified that, based on the rate alcohol is metabolized in the body, Mecham likely had a blood alcohol level of 0.065 g/100 ml within two hours after he stopped driving, and possibly as high as 0.08 g/100 ml.[1] While alcohol affects people differently, Flaherty explained, most people cannot safely drive with a blood alcohol content of 0.05 g/100 ml.

On August 25, 2011, the State charged Mecham with one count of felony driving under the influence (DUI). On October 23, 2012, the State amended the information to add two misdemeanor charges: driving while license suspended/revoked in the first degree (DWLS) and violation of ignition interlock. RCW 46.20.342(1)(a), .740. Mecham requested a bench trial on the two misdemeanors. The felony DUI charge was tried by a jury.

Mecham stipulated that Officer Campbell made a lawful stop and arrest. Mecham also stipulated that, at the time of his arrest, he had previously been convicted of four or more prior offenses within 10 years, pursuant to RCW 46.61.5055(14)(a).

The trial court denied repeated defense motions to suppress Mecham's refusal to perform a field sobriety test. The court ruled that even if the field sobriety test amounted

---

[1] RCW 46.61.502(1) specifies that a person is driving under the influence of alcohol when "within two hours after driving," the individual has "an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood."

3

to a search, it was justified by probable cause. The court likewise rejected Mecham's proposed jury instruction that his refusal could not be used as evidence of guilt.

Mecham also proposed an alternative "to convict" jury instruction for the felony DUI, which stated, "In order to return a verdict of guilty, you must unanimously find from the evidence that each of [the felony DUI] elements has been proven beyond a reasonable doubt." The trial court declined to give Mecham's proposed instruction. Instead, the court gave a to convict instruction consistent with the Washington Pattern Jury Instructions:

> If you find from the evidence that [the felony DUI elements] have been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of [these elements], then it will be your duty to return a verdict of not guilty.

See 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 92.02, at 274 (3d ed. 2008).

In closing, the State argued that Mecham refused to participate in field sobriety testing in order to frustrate and delay the investigation. Several other times in closing the State argued that Mecham refused the field sobriety test, because he knew it would reveal his guilt.

At the bench trial on the misdemeanors, the trial court admitted an order from the Washington State Department of Licensing (DOL) revoking Mecham's driver's license

from October 29, 2010 until August 11, 2013. The revocation order contains a certification of mailing in the bottom right corner, which reads:

> I certify under penalty of perjury under the laws of the state of Washington that I caused to be placed in a U.S. Postal Service mail box, a true and accurate copy of this document to the person named herein at the address shown which is the last address of record. Postage prepaid on September 14, 2010 in Olympia, WA.
>
> [/s/] Elizabeth A. L[illegible]
>
> Agent for the Department of Licensing

The court admitted the revocation order as a DOL business record pursuant to testimony from Abdul Qaasim, a DOL custodian of records. Qaasim explained that he searched the DOL records for information on Mecham and determined that Mecham was a habitual traffic offender. Qaasim also found the revocation order in his research and testified to the date of revocation. However, the person who signed the certification of mailing did not testify. Mecham objected on confrontation clause grounds. The trial court ruled that Mecham did not have a right to confront the person who signed the certification of mailing.

The jury found Mecham guilty of felony DUI. The trial court found Mecham guilty of first degree DWLS and violation of ignition interlock. Mecham timely appealed.

## DISCUSSION

Mecham makes three arguments on appeal. First, he asserts that a field sobriety test constitutes an unreasonable search under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. As a result, he argues, the State improperly penalized him for exercising his constitutional right to refuse consent to a field sobriety test by commenting on his refusal at trial. Second, he

argues that the to convict instruction given at his felony DUI trial violated his constitutional right to a jury trial. And, third, he argues that the certification of mailing on the license revocation order constitutes testimonial hearsay and its admission violated his right to confront the witnesses against him.

## I. Field Sobriety Test

Mecham argues that the trial court erred in admitting evidence that he refused to perform to a field sobriety test.[2] The State then used this as evidence of Mecham's guilt at trial. Mecham argues that a field sobriety test constitutes a search under the Fourth Amendment and article I, section 7. Therefore, he argues, the State's comment on his refusal to perform a field sobriety test unfairly penalized him for exercising his constitutional right to refuse consent to a warrantless search. When a trial court denies a motion to suppress, we review the trial court's conclusions of law de novo. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

Field sobriety tests are not governed by Washington's implied consent statute, RCW 46.20.308. Nevertheless, in Washington, there is "no legal obligation to perform a field sobriety test." City of Seattle v. Personeus, 63 Wn. App. 461, 465-66, 819 P.2d

---

[2] Mecham also assigns error to the trial court's admission of evidence that he declined Officer Campbell's offer to secure his car. However, Mecham does not devote argument as to why this constituted an unconstitutional search that must be suppressed. Herring v. Dep't of Soc. & Health Servs., 81 Wn. App. 1, 13, 914 P.2d 67 (1996) ("Assignments of error not supported by legal argument are not considered on appeal."). Even if Campbell noticing the beer can in Mecham's backseat constituted a search, it clearly falls within the plain view exception to the warrant requirement. See State v. Rose, 128 Wn.2d 388, 399, 401, 909 P.2d 280 (1996) (no constitutional violation when police officer looked through an unobstructed window of a home while standing on the front porch). Furthermore, Mecham did not object to the evidence on Fourth Amendment or article I, section 7 grounds. We therefore review it for manifest constitutional error, which Mecham fails to demonstrate. RAP 2.5(a)(3).

821 (1991). Unlike blood and breath alcohol tests, however, a suspect's right to refuse a field sobriety test is based in common law and not specifically protected by statute. City of Seattle v. Stalsbroten, 138 Wn.2d 227, 236-37, 978 P.2d 1059 (1999).

The Washington Supreme Court held in Stalsbroten that admitting evidence of a suspect's refusal to perform a field sobriety test does not violate the Fifth Amendment, because refusal is neither testimonial nor compelled. Id. at 238-39. The question here is whether admitting refusal as evidence of guilt violates article I, section 7 and the Fourth Amendment.[3] This turns on whether a field sobriety test constitutes an unreasonable search.

A. Reasonableness of a Field Sobriety Test

Mecham argues that a field sobriety test constitutes a search under article I, section 7 and the Fourth Amendment, because it reveals private information that is not voluntarily exposed to public view, it affords the police an intrusive method for viewing that private information, and it is designed to elicit evidence.

Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The provision safeguards "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass." State v. Myrick, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984). The Fourth Amendment protects "[t]he right of the people to be secure in

---

[3] The Washington Supreme Court previously stated that a field sobriety test need not be suppressed, because "the seizure and questioning were reasonable under the Fourth Amendment and Wash. Const. art. I, § 7." Heinemann v. Whitman County, 105 Wn.2d 796, 809, 718 P.2d 789 (1986). However, the Heinemann court did not devote any analysis to the Fourth Amendment or article I, section 7 before concluding there was no need to suppress on that basis.

their persons, houses, papers, and effects, against unreasonable searches and seizures." Distinct from article I, section 7, the Fourth Amendment focuses on whether an individual has a reasonable expectation of privacy. Terry v. Ohio, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). It is well established that article I, section 7 qualitatively differs from the Fourth Amendment, because it places a greater emphasis on privacy. State v. Surge, 160 Wn.2d 65, 70-71, 156 P.3d 208 (2007).

For the purposes of this opinion, we assume that a field sobriety test constitutes a search under both article I, section 7 and the Fourth Amendment. See State v. Nagel, 320 Or. 24, 31, 36, 880 P.2d 451 (1994) (holding that a field sobriety test constitutes a search under the Oregon Constitution and the Fourth Amendment).

As a general rule, we presume that warrantless searches are unreasonable and violate both constitutions. State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). However, the State may rebut this presumption by showing that a search falls within one of the narrow exceptions to the warrant requirement. State v. Day, 161 Wn.2d 889, 893-94, 168 P.3d 1265 (2007).

One such exception is an investigative detention, or Terry stop. Id. at 895. Officers may briefly, without a warrant, detain a person to investigate whether a crime has been committed. Id. A Terry stop is lawful if the State can point to specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. State v. Kinzy, 141 Wn.2d 373, 384-85, 5 P.3d 668 (2000).

Whether the officer's suspicion is reasonable is determined by the totality of the circumstances known to the officer at the inception of the stop. Gatewood, 163 Wn.2d

at 539; State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). This includes factors such as the officer's training and experience, the location of the stop, the conduct of the suspect, the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained. State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). The degree of intrusion must also be appropriate to the type of crime under investigation and the probable dangerousness of the suspect. State v. Wheeler, 108 Wn.2d 230, 235, 737 P.2d 1005 (1987).

Here, the totality of the circumstances justified Officer Campbell's reasonable suspicion that Mecham was driving while intoxicated. Mecham's probable dangerousness is obvious: a drunk driver presents a grave danger to the public.[4] See South Dakota v. Neville, 459 U.S. 553, 558, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (recognizing the carnage and tragedy caused by drunk drivers); see also RCW 46.55.350(1)(a).

Mecham showed clear signs of intoxication. Officer Campbell testified that Mecham's movements were sluggish and his speech was slurred and repetitive. Campbell also noticed that Mecham's breath smelled of alcohol and "overall he appeared intoxicated." Campbell based this conclusion on his DUI training and his five years of experience as a police officer. He explained that he had made around 50 DUI arrests and conducted 50 to 100 field sobriety tests during his career.

---

[4] "[T]he threat to public safety posed by a person driving under the influence of alcohol is as great as the threat posed by a person illegally concealing a gun." State v. Superior Court, 149 Ariz. 269, 275, 718 P.2d 171 (1986); see also Blasi v. State, 167 Md. App. 483, 510, 893 A.2d 1152 (2006).

There is some physical intrusion with a field sobriety test. The tests involve unusual physical maneuvers that require balance and coordination. They have the potential to reveal information about the suspect's medical conditions or physical disabilities. Nagel, 320 Or. at 36.

However, the degree of intrusion is not excessive and a field sobriety test is an appropriate technique to measure the suspect's intoxication. Officer Campbell explained that he uses a standardized field sobriety test promulgated by the National Highway Traffic Safety Administration. The three main components of this test are the horizontal gaze nystagmus test, the heel-to-toe "walk and turn," and balancing on one foot while counting.

The horizontal gaze nystagmus test looks for involuntarily jerking of the eyes that occurs only when someone has been drinking or using certain drugs. The other two components gauge the suspect's ability to listen, comprehend instructions, and perform simple tasks involving balance. Officer Campbell agreed that these tests are very useful tools for investigating DUI. Officer Moore likewise testified that a field sobriety test is useful in determining whether a person is driving impaired. Moore explained that field sobriety tests are psychophysical tests, which means they test the body and mind simultaneously. Such divided attention is necessary to effectively operate a vehicle, and being intoxicated impairs that ability.

Given these facts, we conclude that the field sobriety test is a brief and reasonable method for determining whether an individual is intoxicated. The attendant intrusion was therefore appropriate given Campbell's training and Mecham's evident intoxication. We hold that Campbell's request for Mecham to perform a field sobriety

test was justified under the Terry stop exception to the warrant requirement.[5] Thus, even if the field sobriety test constituted a search, it was reasonable based on the totality of the circumstances.

B. State's Comment on Mecham's Refusal

Our final determination is whether the State impermissibly commented on Mecham's refusal to perform a field sobriety test. Mecham argues that under this court's decision in State v. Gauthier, 174 Wn. App. 257, 298 P.3d 126 (2013), an individual's refusal to consent to a warrantless search may not be admitted as evidence of guilt without violating article I, section 7 and the Fourth Amendment.

In Gauthier, a detective asked the defendant for a cheek swab of his DNA (deoxyribonucleic acid) before obtaining a warrant or court order. Id. at 261. The defendant refused. Id. The State argued at trial that this refusal indicated the defendant's consciousness of guilt. Id. at 262. We held that the State's argument impermissibly burdened the defendant's constitutional right to refuse consent to a warrantless search and seizure of his DNA. Id. at 267.

---

[5] At least 12 other states have held that a field sobriety test is permissible under Terry when the officer has reasonable suspicion that the driver is intoxicated. See, e.g., Superior Court, 149 Ariz. at 274; State v. Lamme, 216 Conn. 172, 176-77, 184, 579 A.2d 484 (1990); State v. Taylor, 648 So. 2d 701, 703-04 (Fla. 1995); State v. Golden, 171 Ga. App. 27, 30, 318 S.E.2d 693 (1984); State v. Wyatt, 67 Haw. 293, 687 P.2d 544, 552-53 (1984); State v. Pick, 124 Idaho 601, 605. 861 P.2d 1266 (1993); State v. Stevens, 394 N.W.2d 388, 391-92 (Iowa 1986); Blasi, 167 Md. App. at 509-10; State v. Little, 468 A.2d 615, 617-18 (Me. 1983); Commonwealth v. Blais, 428 Mass. 294, 297-98, 701 N.E.2d 314 (1998); Columbus v. Anderson, 74 Ohio App. 3d 768, 771-72, 600 N.E.2d 712 (1991); see also McCormick v. Mun. of Anchorage, 999 P.2d 155, 160 (Alaska Ct. App. 2000).

Distinct from Mecham's case, the reasonableness of the search in <u>Gauthier</u> was premised on the defendant's consent. <u>See</u> <u>id.</u> at 263. Without consent and without a warrant, the detective had no authority to search the defendant's DNA and any search would have been unreasonable. <u>See</u> <u>id.</u> The <u>Gauthier</u> court made clear that "[t]he constitutional violation was that Gauthier's lawful exercise of a constitutional right was introduced against him as substantive evidence of his guilt." <u>Id.</u> at 267. In other words, the State may not penalize someone for exercising a constitutional right. <u>Id.</u>

By contrast, in <u>State v. Nordlund</u>, the defendant refused to provide a body hair sample even though the State had a court order to collect hair samples from him. 113 Wn. App. 171, 187, 53 P.3d 520 (2002). The State argued at trial that this refusal showed the defendant's consciousness of guilt. <u>Id.</u> The appellate court held that it was reasonable to infer guilt from the defendant's refusal when there was a valid court order allowing body hair sampling. <u>Id.</u> at 189. In sum, the defendant had no constitutional right to refuse consent, because the search was reasonable pursuant to the court order. <u>See</u> <u>id.</u> Reading <u>Gauthier</u> and <u>Nordlund</u> together indicate that the State's comment on refusal is impermissible only when there is a constitutional right to refuse consent.

Mecham did not have a constitutional right to refuse consent to the field sobriety test, because the test was reasonable pursuant to a <u>Terry</u> stop. Mecham had only a common law right to refuse consent to the field sobriety test. <u>Stalsbroten</u>, 138 Wn.2d at 237. Such refusal is not testimonial under <u>Stalsbroten</u>, but "'is best described as conduct indicating a consciousness of guilt.'" <u>Id.</u> at 234 (quoting <u>Newhouse v. Misterly</u>, 415 F.2d 514, 518 (9th cir. 1969)).

12

We hold that the State did not impermissibly comment on Mecham's refusal to perform the field sobriety test, because there was no constitutional right for Mecham to refuse the test.[6]

## II. To Convict Jury Instruction

Mecham argues that his constitutional right to a jury trial was violated when the trial court instructed the jury that it had a duty to convict if it found each element of felony DUI proved beyond a reasonable doubt. Mecham asserts that the instruction misstates the law, because the jury always has the power to acquit and the court cannot direct a verdict. Therefore, he argues, no such duty to return a guilty verdict exists.

Each division of this court has rejected similar challenges to the same to convict instruction that Mecham contests here. See, e.g., State v. Meggyesy, 90 Wn. App. 693, 706, 958 P.2d 319 (1998) (Division One); State v. Brown, 130 Wn. App. 767, 771, 124 P.3d 663 (2005) (Division Two); State v. Wilson, 176 Wn. App. 147, 151, 307 P.3d 823 (2013) (Division Three), review denied 179 Wn.2d 1012, 316 P.3d 495 (2014).

Most recently, we rejected the same issue in State v. Moore, __Wn.2d__, 318 P.3d 296, 299 (2014). There, the jury was instructed, "'If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.'" Id. at 297 (emphasis in original). We held,

> This is a correct statement of the law. Jurors have a duty to apply the law given to them. This instruction does not invade the province of the jury nor otherwise violate a defendant's right to a jury trial. The trial court does not err in giving the instruction when requested.

---

[6] See also Neville, 459 U.S. at 566 (holding that due process is not violated when the government commented on the defendant's refusal to submit to a blood alcohol test, because the government did not mislead the defendant into believing his refusal could not be used against him in a later trial).

Id. at 299. Moore reaffirms and upholds the "duty to convict" language. Id. Therefore, we affirm the to convict instruction given at Mecham's trial, because it is substantively identical to the one given in Moore.

III.  Certification of Mailing

Mecham argues that the certification of mailing on the license revocation order is testimonial hearsay that violates the confrontation clause for two reasons. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.  First, he argues that it contains an ex parte statement made for the purpose of establishing the essential fact that the revocation order was mailed to him.  Second, a reasonable person would anticipate the certification to be used in a legal proceeding, because it was sworn under penalty of perjury.  As a result, Mecham argues, his DWLS conviction must be reversed.

We review alleged confrontation clause violations de novo. State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).  When there is a violation, we review for harmless error.  Id.  The State must show beyond a reasonable doubt that the error did not contribute to the verdict.  Id. at 117.

A person accused of a criminal offense has the right to confront the witnesses against him.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.  Thus, a witness may not testify against a defendant unless that witness appears at trial or the defendant has a prior opportunity for cross-examination.  Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

Testimony is typically a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (quoting 2 N. WEBSTER, AN AMERICAN DICTIONARY OF

14

THE ENGLISH LANGUAGE (1828)). Testimonial statements subject to confrontation include ex parte in-court testimony or its functional equivalent, such as affidavits, depositions, prior testimony, or confessions. Id. at 51-52. Put another way, a testimonial statement is "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at 52 (quoting Br. for National Association of Criminal Defense Lawyers et al. as Amicus Curiae 3).

The Washington Supreme Court recently considered whether certifications attesting to the existence or nonexistence of DOL records are testimonial. Jasper, 174 Wn.2d at 102, 104, 108. Two defendants were charged with DWLS. Id. at 101, 103. In both cases, the State introduced into evidence an affidavit from a DOL records custodian. Id. at 101, 104. Both affidavits stated that, after a diligent search, the official DOL records indicated that the defendants' licenses were suspended or revoked on the date of their offenses. Id. On appeal, the defendants argued that these affidavits constituted testimonial certifications, subject to the confrontation clause. Id. at 100. The Washington Supreme Court agreed. Id. at 116.

The Jasper court based its holding on the United States Supreme Court's decision in Melendez-Diaz. Id. at 111. The Melendez-Diaz Court considered whether certificates of analysis were testimonial statements. 557 U.S. at 308. The certificates reported results of a forensic analysis establishing that a seized substance was cocaine. Id. The Court held that the certificates were "quite plainly affidavits," falling squarely within the core class of testimonial statements described in Crawford. Id. at 310. The certifications were "functionally identical to live, in-court testimony" and used for the sole purpose of establishing a fact at trial. Id. at 310-11.

In light of <u>Melendez-Diaz</u>, the <u>Jasper</u> court held that the affidavits from the DOL records custodians were clearly testimonial statements. 174 Wn.2d at 115. The affidavits were created and used for the sole purpose of establishing critical facts at trial. <u>Id.</u> They served as substantive evidence against the defendants, whose guilt depended on the nonexistence of the DOL record for which the clerk searched. <u>Id.</u> Because the defendants were not given the opportunity to cross-examine the officials who authored the affidavits, their admission violated the confrontation clause. <u>Id.</u> at 116.

Here, the certification of mailing is a sworn statement, made under penalty of perjury. This would lead an objective witness to reasonably believe that the certification would be used at a later trial. And, it is difficult to say that such a sworn statement does not meet the definition of testimony in <u>Crawford</u>: a solemn declaration or affirmation made for the purpose of establishing or proving some fact. 541 U.S. at 51.

However, the certification of mailing was not created or used for the sole purpose of establishing an essential fact <u>at trial</u>. The elements of first degree DWLS are: (1) the defendant was driving in Washington; (2) his privilege to drive was revoked at the time; and (3) the revocation was based on his status as a habitual traffic offender. RCW 46.20.342(1)(a). In <u>Jasper</u>, the affidavits were offered to prove the essential fact that the defendants' licenses were suspended at the time of their offenses. 174 Wn.2d at 117-19. By contrast, the fact of mailing is not an element of the crime to be proved at trial. Rather, mailing goes to whether the license revocation complied with due process.

In a DWLS prosecution, the State must prove that a license revocation order complied with due process.[7] City of Redmond v. Arroyo-Murillo, 149 Wn.2d 607, 612, 70 P.3d 947 (2003). However, the validity of the revocation order is a legal question for the court, not an element of the crime. See State v. Miller, 156 Wn.2d 23, 31, 123 P.3d 827 (2005). The court, not the trier of fact, must make this threshold determination of validity. Id. The right to confrontation is a trial right and is not implicated in such pretrial proceedings. State v. Fortun-Cebada, 158 Wn. App. 158, 172-73, 241 P.3d 800 (2010). Therefore, the fact of mailing is neither subject to the confrontation clause, nor an essential fact to be proven at a DWLS trial.

By the same token, the certification of mailing is not hearsay, because it was not introduced for the truth of the matter asserted. Crawford, 541 U.S. at 59-60 n.9 (recognizing that the confrontation clause does not bar admission of testimonial statements not introduced for the truth of the matter asserted). The revocation order was admitted at trial to show that Mecham's license was revoked on the date of his offense. It was not admitted to show the fact of mailing. The DOL records custodian, Qaasim, did not discuss the certification, and it was not relevant to his testimony.

For the same reasons, even if the certification of mailing was testimonial hearsay subject to the confrontation clause, its admission was harmless. Qaasim testified that he researched Mecham's DOL records. He explained that the order revoking Mecham's license was in effect on May 15, 2011, the date of Mecham's offense. Qaasim further

---

[7] Indeed, Mecham moved to dismiss the DWLS charge on due process grounds before trial. He argued that the State failed to take additional steps to notify him of the revocation, even though the DOL knew of another address for him prior to the revocation taking effect. Mecham does not renew any due process challenge on appeal.

testified that the DOL records showed Mecham was a habitual traffic offender. This testimony established the second and third elements of first degree DWLS. Mecham had the opportunity to cross-examine Qaasim, though he declined to do so. The certification of mailing did not go to fact to be proved at trial. As such, its admission was harmless.

We hold that the certification of mailing was properly admitted.

We affirm.

Appelwick, J.

WE CONCUR:

Leach, J.

Becker, J.