
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75757-1-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MITCHELL EUGENE WIERMAN, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: January 29, 2018 |
|  | ) |  |

Cox, J. – Mitchell Wierman appeals his judgment and sentence, claiming that the trial court erred in denying his motion to suppress evidence. We hold that the officer had reasonable suspicion to expand the scope of the traffic stop to ask Wierman where he was coming from. Further, Wierman's Statement of Additional Grounds for Review has no merit. We affirm.

Officer Christopher Farley was on patrol at 11:00 p.m. when Wierman rode past him on his bicycle without any headlights. Officer Farley pulled into the turn lane and activated his patrol car's flashing lights. Wierman stopped, and Officer Farley confronted him about the missing headlight but did not issue a citation.

Officer Farley then told Wierman that he had seen him a week or two earlier engaging in a hand-to-hand drug transaction at a nearby casino. He asked Wierman where he was coming from, and Wierman responded that he

was coming from the same casino. Officer Farley then told Wierman, "I believe you're a drug dealer. Hand me your drugs."[1] Wierman gave him a small bag of what appeared to be methamphetamine. Officer Farley arrested Wierman and, in the ensuing search incident to arrest, found that Wierman was carrying additional bags of methamphetamine and a drug pipe.

The State charged Wierman with possession of a controlled substance. Wierman moved to suppress the evidence, arguing that Officer Farley lacked reasonable suspicion to detain him. The trial court denied the motion, and the parties proceeded with a stipulated bench trial. The trial court found Wierman guilty of possession of a controlled substance and entered its judgment and sentence.

Wierman appeals.

## MOTION TO SUPPRESS

Wierman argues that the trial court erred in denying his motion to suppress because Officer Farley did not have reasonable suspicion to prolong Wierman's detention after informing him about the missing bicycle light. We disagree.

In general, a warrantless seizure is per se unreasonable and violates both the Fourth Amendment and article I, section 7 of the Washington State Constitution.[2] An investigative stop is an exception to the warrant requirement

---

[1] Report of Proceedings (July 31, 2014) at 11.

[2] State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

under Terry v. Ohio.[3] A Terry stop allows an officer to briefly detain a person for questioning if the officer has a "reasonable suspicion that the person stopped is or is about to be engaged in criminal activity."[4] The State bears the burden of proving that a warrantless seizure falls within an exception to the warrant requirement.[5]

In evaluating whether an officer had reasonable suspicion justifying the investigatory stop, we look at the totality of the circumstances known to the officer.[6] We consider "the officer's training and experience, the location of the stop, the conduct of the suspect, the purpose of the stop, the amount of physical intrusion on the suspect's liberty, and the length of time the suspect is detained."[7] "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."[8] In the absence of reasonable suspicion, the evidence uncovered from the stop must be suppressed.[9]

---

[3] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); State v. Fuentes, 183 Wn.2d 149, 158, 352 P.3d 152 (2015).

[4] Fuentes, 183 Wn.2d at 158.

[5] State v. Doughty, 170 Wn.2d 57, 61, 239 P.3d 573 (2010); State v. Acrey, 148 Wn.2d 738, 745-46, 64 P.3d 594 (2003).

[6] Acrey, 148 Wn.2d at 747.

[7] State v. Mecham, 181 Wn. App. 932, 943, 331 P.3d 80 (2014).

[8] Illinois v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

[9] Fuentes, 183 Wn.2d at 158.

A lawful Terry stop is limited in scope and duration to fulfilling the investigative purpose of the stop.[10] Once that purpose is fulfilled, the officer must end the investigative stop.[11] If the officer's suspicions are further aroused, "the scope of the stop may be extended and its duration may be prolonged."[12] However, "[o]nce the initial stop purpose is accomplished, any further detention must be based on 'articulable facts giving rise to a reasonable suspicion of criminal activity.'"[13] "In other words, 'police officers may not use routine traffic stops as a basis for generalized, investigative detentions or searches.'"[14]

In reviewing a trial court's denial of a motion to suppress, we determine whether substantial evidence supports the trial court's findings of fact and whether those findings of fact support the conclusions of law.[15] We review de novo the trial court's conclusions of law.[16]

Officer Farley was the only witness who testified at the CrR 3.6 hearing on Wierman's motion to suppress. He testified that on December 9, 2013, he was on patrol at 11:00 p.m. and parked at a red light, when Wierman road down the

---

[10] Acrey, 148 Wn.2d at 747.

[11] Id.

[12] Id.

[13] State v. Veltri, 136 Wn. App. 818, 822, 150 P.3d 1178 (2007) (quoting State v. Armenta, 134 Wn.2d 1, 15-16, 948 P.2d 1280 (1997)).

[14] Id. (quoting State v. Henry, 80 Wn. App. 544, 553, 910 P.2d 1290 (1995)).

[15] Fuentes, 183 Wn.2d at 157.

[16] Id.; Acrey, 148 Wn.2d at 745.

sidewalk on his bicycle, without a headlight. Officer Farley stopped Wierman by pulling into the turn lane and activating his patrol car's flashing lights. Officer Farley recognized Wierman from previous encounters before he approached him.

Approximately one to two weeks earlier, Officer Farley had been working undercover, and he was parked in an unmarked car at the Quil Ceda Casino. He saw Wierman ride up to another vehicle on his bicycle and engage in a "hand-to-hand" exchange. Officer Farley later saw that same vehicle, parked, and the driver appeared to be smoking or injecting what Officer Farley assumed to be narcotics. Because he was working undercover on a different investigation, Officer Farley did not approach Wierman or the other vehicle, and he did not ask anyone else to investigate.

When Officer Farley approached Wierman on December 9, 2013, he told him that he needed a light on his bicycle, but did not issue a citation. He then told him that he had seen the hand-to-hand exchange one or two weeks prior. He asked Wierman where he was coming from, and Wierman said the casino. Officer Farley said, "I believe you're a drug dealer. Hand me your drugs."[17]

---

[17] Report of Proceedings (July 31, 2014) at 11.

Officer Farley testified that he "had been informed by other people, informants, that Wierman deals in narcotics."[18] He did not remember when the informer told him this, but stated it was "probably months ago."[19]

The trial court concluded that the totality of the circumstances—the prior suspected drug transaction at the casino, the unnamed informant's tip that Wierman was a drug dealer, and Wierman's admission that he was coming from the casino—was enough to establish reasonable suspicion. It denied Wierman's motion to suppress.

### Findings of Fact

Wierman argues that the trial court erred in finding that Office Farley "saw Wierman engage in a hand-to-hand drug sale at a casino weeks before December 9, 2013."[20] Specifically, Wierman argues that substantial evidence fails to establish that Officer Farley definitively saw him engage in a drug transaction. He notes that Officer Farley only testified that he assumed the earlier transaction was a narcotics transaction, and there was no evidence that Officer Farley had the knowledge, training or experience to identify any such exchange as a narcotics transaction. He argues that the transaction might have been an innocuous exchange such as giving or receiving a cigarette from the vehicle's occupant. We are unpersuaded by these arguments.

---

[18] Id. at 20.

[19] Id. at 25.

[20] Appellant's Opening Brief at 9-10; Clerk's Papers at 70.

Wierman does not challenge the trial court's findings that Officer Farley observed some sort of exchange at the casino nor that he received the informant's tip, so those finding are verities on appeal.[21] In its conclusions, the trial court noted that "Officer Farley saw what he *thought* was a drug transaction."[22] It characterized what Officer Farley saw as "some kind of exchange that ended up with people smoking something," and recognized that "[t]here was limited evidence to explain why he believed it was a drug transaction."[23] Despite the lack of definitive evidence as to what Officer Farley observed, the trial court concluded that the unnamed informant's tip supported Officer Farley's "belief" that he had seen a hand-to-hand drug transaction.[24]

Because the trial court acknowledged the uncertainty of what Officer Farley observed in the casino parking lot, any error arising from its failure to consistently use conditional language as to what Officer Farley witnessed was harmless. To the extent the definitive characterization was not supported by the evidence, it was not essential to, and did not materially affect, the trial court's conclusions of law so it does not warrant reversal.[25]

---

[21] Veltri, 136 Wn. App. at 821; see Acrey, 148 Wn.2d at 745.

[22] Clerk's Papers at 72 (emphasis added).

[23] Id.

[24] Id.

[25] State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992).

*Conclusions of Law*

The State and Wierman agree that Wierman was lawfully seized when Office Farley activated his flashers, and confronted Wierman for failing to have a light on his bicycle. But Wierman argues that Officer Farley lacked reasonable suspicion to prolong the seizure once the traffic investigation concluded. We disagree.

In order to expand the scope of the investigation, Officer Farley needed reasonable suspicion of some other criminal activity.[26] In determining whether Officer Farley had reasonable suspicion to prolong the investigative encounter with Wierman, the trial court considered the officer's knowledge that Wierman was coming from the casino. But the determination of whether an officer had a reasonable articulable suspicion is based on the facts that the officer knew at the moment the seizure occurred.[27] Thus, in determining whether Officer Farley had reasonable suspicion to prolong the encounter, the trial court erred in considering Wierman's response to the question about where he was coming from. The State concedes this point.

We consider the facts known to Officer Farley at the time he decided to confront Wierman about the earlier exchange at the casino and to ask him where he was coming from. At that time, Officer Farley had stopped Wierman while he was riding a bicycle, at night. A few weeks earlier, Officer Farley had observed

---

[26] State v. Smith, 115 Wn.2d 775, 785, 801 P.2d 975 (1990); Henry, 80 Wn. App. at 551-53.

[27] State v. Brown, 154 Wn.2d 787, 798, 117 P.3d 336 (2005).

8

what he believed to be a drug transaction, at night, while Wierman was on his bicycle. In addition, an unidentified informant had told Officer Farley that Wierman was dealing drugs.

For purposes of a Terry stop, an informant's tip provides reasonable suspicion if, under the totality of the circumstances, it has sufficient "indicia of reliability."[28] Sufficient indicia of reliability can be shown with evidence suggesting that the informant is reliable or with police corroboration.[29] Officers can directly corroborate a tip by observing circumstances that suggest criminal activity.[30]

Here, the unidentified informant's tip is corroborated by Officer Farley's observation of the hand to hand exchange one to two weeks before stopping Wierman. This was enough to justify prolonging the detention to confront Wierman about the earlier exchange at the casino and to ask him where he was coming from.

Wierman notes that the trial court appeared to conclude that without the knowledge that Wierman was coming from the casino, Officer Farley might not have had reasonable suspicion for extending the seizure beyond resolving the headlight issue. But the trial court's determination that reasonable suspicion

---

[28] State v. Howerton, 187 Wn. App. 357, 365, 348 P.3d 781, review denied, 184 Wn.2d 1011 (2015); State v. Marcum, 149 Wn. App. 894, 903, 205 P.3d 969 (2009).

[29] Howerton, 187 Wn. App. at 365; Marcum, 149 Wn. App. at 904.

[30] State v. Saggers, 182 Wn. App. 832, 841, 332 P.3d 1034 (2014); Marcum, 149 Wn. App. at 907.

required Officer Farley to know that Wierman was coming from the casino is a conclusion of law that we review de novo.[31] In doing so, we disagree with the trial court on this point. There was reasonable suspicion based on what the officer knew.

In sum, Officer Farley had reasonable suspicion that Wierman was engaged in criminal activity, specifically drug dealing, based on his observation of what appeared to be a prior drug transaction, corroboration from an informant that Wierman was a drug dealer, and the existence of similar circumstances in that Wierman was again on his bicycle, riding at night.

## STATEMENT OF ADDITIONAL GROUNDS

Wierman raises a number of issues in his statement of additional grounds. None have merit.

He argues that Officer Farley had been harassing him, in part because he had mistaken Wierman for someone else. He also claims that Officer Farley had lied to Wierman's parents, told other lies, and refused to investigate a burglary at his parents' home.

Because these arguments are not supported by evidence in the record, we cannot review them.[32] Moreover, to the extent Wierman is challenging Officer Farley's credibility, he has failed to raise an issue for appeal because this court defers to the trier of fact on issue of witness credibility.[33]

---

[31] Howerton, 187 Wn. App. at 364.

[32] See RAP 10.10(c).

[33] State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012).

10

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Spearman, J._                    _Leach, J._