IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47469-7-II |
| Appellant, | |
| v. | |
| JEREMY ROBERT DOCKSTADER, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — The State charged Jeremy Robert Dockstader with felony driving under the influence of intoxicants,[1] first degree driving while in suspended or revoked status,[2] and failure to have an ignition in interlock.[3] Dockstader filed a motion to suppress evidence obtained pursuant to the traffic stop and subsequent investigation, alleging that the stop was unlawful. The trial court granted Dockstader's motion and dismissed the case. The State appeals the trial court's order. We affirm.

FACTS

A convenience store clerk named Tom (the informant) called 911 and reported that a silver Dodge Ram truck was parked in the store's parking lot, with the engine running and revving, and the driver was leaning on the steering wheel. The informant's phone number and address, and the

_____

[1] RCW 46.61.502(1), (6)(a).

[2] RCW 46.20.342(1)(a).

[3] RCW 10.05.140; RCW 46.20.720, .740; RCW 46.61.5055.

truck's license plate number were dispatched to law enforcement. Officers Dennis Harvey and Nicholas McClelland were driving separate vehicles when they received the information from dispatch, and both responded to the parking lot, arriving approximately eight minutes later.

Officer Harvey saw a truck that he believed matched the description from dispatch, but it was no longer parked. The truck was stopped along the left-hand side of the road, which had no painted lane lines and an abruptly ending shoulder. The truck was partially off the road. The driver of the truck, Dockstader, was talking to a man on a bicycle. Based on the informant's tip, Officer Harvey "initiated a traffic stop"[4] by pulling his patrol car behind the truck and activating his emergency lights. Clerk's Papers at 95 (Finding of Fact 10). After initiating the traffic stop, Officer Harvey saw the license plate and confirmed that the vehicle matched the license plate number provided by the informant.

Dockstader was arrested and charged with felony driving under the influence of intoxicants, first degree driving while in suspended or revoked status, and failure to have an ignition interlock. Dockstader brought a motion under CrR 3.6 to suppress all evidence obtained pursuant to the traffic stop and subsequent investigation.

Following a CrR 3.6 hearing, the trial court found that Officer Harvey did not base his stop of Dockstader on any observed driving, but on the informant's tip, and Officer Harvey did not know if the informant's tip was reliable. Specifically, the trial court found:

---

[4] The trial court's unchallenged finding refers to the situation as a "traffic stop" even though Dockstader's truck was already stopped when Officer Harvey pulled his patrol car in behind the truck and activated the emergency lights. This opinion will also call it a "stop" to be consistent with the trial court's findings.

5. The officers gave testimony on direct examination regarding the driving observed. This was contradicted by their testimony on cross-examination, by video surveillance, and by radio dispatch. Both officers' testimony upon cross-examination indicated that [Dockstader's] vehicle was stopped at the inception of police contact. . . .

6. The officers actually observed that the vehicle was stopped along the left-hand side of True Lane Southwest, partially on the road, and partially off the road prior to the initiation of the stop. . . .

. . . .

13. Officer Harvey testified, "If it is not in my report, it was not a basis for the stop." Officer Harvey did not articulate any observations regarding driving of the vehicle in his report other than that he saw it pull onto True Lane.

14. Officer Harvey testified that he did not base his stop on any observed driving. The basis for the stop was the tip.

15. On cross-examination, Officer Harvey testified that he did not know if the tip was reliable.

16. Officer Harvey did not corroborate the information from the tip prior to initiating the stop.

CP at 95-96 (Findings of Fact).

The trial court concluded that

The information received from Tom to the 911 dispatcher did contain information or fact that could have, if corroborated, provided Officer Harvey with reasonable suspicion at the inception of the stop. The vehicle he observed did match the description and the license plate, but only after he got behind that vehicle and had already initiated the stop. The stop in this case occurred prematurely.

When viewing the totality of the circumstances, the facts presented, the briefing presented in this case, the exhibits used, and the video observed, the totality of the circumstances known to Officer Harvey at the inception of the stop did not amount to specific and articulable facts giving rise to reasonable suspicion that the defendant stopped was or was about to be engaged in criminal activity.

CP at 96-97 (Conclusions of Law). The trial court granted Dockstader's CrR 3.6 motion to suppress the evidence and dismissed the case because the motion was dispositive. The State appeals.

## ANALYSIS

The sole issue on appeal is whether the trial court erred when it granted Dockstader's CrR 3.6 motion to suppress evidence. The State contends that law enforcement "had authority under *Terry*[5] to detain" Dockstader and the trial court erroneously granted the motion to suppress. Br. of Appellant at 7. We disagree.

A.     THE TRIAL COURT'S FINDINGS OF FACT

When reviewing the trial court's grant of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether those findings of fact support the challenged conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The State does not assign error to the trial court's CrR 3.6 findings of fact, and therefore, they are considered verities on appeal. RAP 10.3(g); *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review de novo whether the findings support the trial court's conclusions of law. *Garvin*, 166 Wn.2d at 249; *State v. Shuffelen*, 150 Wn. App. 244, 252, 208 P.3d 1167, *review denied*, 220 P.3d 210 (2009).

B.     REASONABLE AND ARTICULABLE SUSPICION

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a

---

[5]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

warrant supported by probable cause. *Garvin*, 166 Wn.2d at 249. A warrantless seizure is presumed unreasonable and the State has the burden of establishing that it falls within an exception to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). A *Terry* investigative stop is an exception to the warrant requirement. *State v. Acrey*, 148 Wn.2d 738, 746, 64 P.3d 594 (2003). A *Terry* stop is permissible where the State shows "that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *Z.U.E.*, 183 Wn.2d at 617. The officer's reasonable suspicion must be grounded in specific and articulable facts. *Id.* The facts must demonstrate more than a generalized suspicion or hunch that the person detained has committed a crime. *Id.* at 618. "[T]he facts must connect the particular person to the *particular crime* that the officer seeks to investigate." *Id.*

The reasonableness of the officer's suspicion is based on the totality of the circumstances. *State v. Z.U.E.*, 178 Wn. App. 769, 780, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015). The focus is on what the officer knew at the time of the stop, and subsequent events or circumstances cannot retroactively justify a stop. *Id.* The State bears the burden of showing the propriety of an investigative stop. *Id.*

When an officer bases his suspicion on an informant's tip, the State must demonstrate that the informant's tip bears some indicia of reliability. *Z.U.E.*, 183 Wn.2d at 618. Indicia of reliability is shown by "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Id.* A named,

but otherwise unknown, citizen informant is not presumed to be reliable and a report from such an informant may not justify an investigative stop.[6]  *Z.U.E.*, 178 Wn. App. at 783.

Here, the trial court found that Officer Harvey did not base his stop on any observed driving, the basis for the stop was a tip, Officer Harvey testified that he did not know if the tip was reliable, and Officer Harvey did not corroborate the information from the tip prior to initiating the stop.  Because the trial court's findings are not challenged and are verities on appeal, we hold that the State has failed to demonstrate the reliability of the informant's tip.  *Lohr*, 164 Wn. App. at 418.  The trial court's unchallenged findings support its conclusion that based on the totality of the circumstances, Officer Harvey did not have a reasonable suspicion grounded in specific and articulable facts that Dockstader was engaged in or was about to engage in criminal activity.

The State relies on *Navarette v. California*, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014), to argue that the circumstances established the informant's reliability.  But *Navarette* is distinguishable.  In *Navarette*, an anonymous 911 caller reported the defendant's truck ran her off the road.  134 S. Ct. at 1686.  The Court held that the "behavior alleged by the 911 caller" created reasonable suspicion of the ongoing crime of drunk driving.  *Id.* at 1690.  The Court noted that various facts supported the officer's reasonable belief of the caller's reliability: the caller was an eyewitness to potential criminal activity, who made the report contemporaneously with the event, and used the 911 emergency system.  *Id.* at 1689.  But here, the informant did not report that Dockstader was intoxicated or that he committed a crime.  Rather the informant reported that

---

[6] Known citizen informants, however, are presumptively reliable.  *State v. Howerton*, 187 Wn. App. 357, 366, 348 P.3d 781, *review denied*, 184 Wn. 2d 1011 (2015); *accord State v. Gaddy*, 152 Wn.2d 64, 72, 93 P.3d 872 (2004); *see Z.U.E.*, 178 Wn. App. at 782.

No. 47469-7-II

Dockstader was slumped over his steering wheel, which, without more, is not criminal activity. While the informant here was an eyewitness and used the 911 emergency system, the informant did not observe or report criminal activity. Therefore, *Navarette* is not applicable.

However, even if we assume the informant was reliable, Officer Harvey still lacked reasonable suspicion that Dockstader was engaged in criminal activity. Unlike the named but otherwise unknown informants in *Z.U.E.* and *Navarette*, the informant here did not report any criminal activity. The informant reported a man passed out in his parked truck in a parking lot. Because the informant did not report criminal activity, Officer Harvey lacked reasonable suspicion based on the informant's report to initiate the stop.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, P.J.

We concur:

_____
Melnick, J

_____
Sutton, J.