IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36326-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HECTOR SALINAS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Hector Salinas appeals his felony conviction for possession of a

controlled substance. We affirm.

## FACTS

In the early morning hours of January 7, 2018, callers to 911 began reporting a

large fight in the parking lot of the Gaslight Bar and Grill on George Washington Way in

Richland, Washington. A computer aided dispatch (CAD) report provided the following summary:

The initial call was placed to operator 618200 at 1:00:17 a.m. The caller identified himself as the manager of the Gaslight and provided his identification and contact information. The caller stated there were numerous people involved in the fight, but no weapons.

At 1:01:21 a.m. a second individual called into dispatch (operator 610580), reporting a subject with a knife. The second caller was never identified, but they provided a running commentary of the events at the Gaslight. The second caller gave a description of the subject with the knife and added that the subject had gotten into a white Buick sports utility vehicle (SUV) with specified license plates. The second caller reported that there were four people inside the SUV and, about two minutes into the call (1:03:32 a.m.), the second caller stated the SUV was turning left onto George Washington Way. Beginning at 1:03:29 a.m., information regarding the direction of the SUV was also obtained by operator 618200 from a third, identified caller.

Benton County Sheriff's Deputy Scott Hutson responded to the dispatch reports and performed a traffic stop of a white SUV that was headed south on George

Washington Way. At the time of the stop, traffic was limited; the white SUV was the

only SUV on the road. Hector Salinas was discovered as a passenger inside the SUV.

Subsequent investigation revealed he was in possession of cocaine. Mr. Salinas was

then charged with unlawful possession of a controlled substance.

Prior to trial, the defense filed a motion to suppress, arguing law enforcement

lacked reasonable suspicion to stop the vehicle. The State filed a responsive

memorandum and attached the CAD report, documenting the foregoing information.

The court held an evidentiary hearing regarding the suppression motion. At the

hearing, the State elicited testimony from Deputy Hutson, along with additional testimony

from Richland Police Department Officers Brigit Clary and Bryce Henry. The State did

not formally move for admission of the CAD report. Nor did the State introduce any 911

recordings.

The suppression hearing testimony was less detailed than the information in the

CAD report. The officers did not specify how many individuals called into 911 or

whether the callers were identified or anonymous. According to the testimony, dispatch

received a report of a fight at the Gaslight and was advised that someone involved in

the fight had a knife. It was not clear whether the knife had been used in the fight, but the

person with the knife left the Gaslight in an SUV with partially identified license plates. Dispatch also reported the SUV was headed southbound on George Washington Way. There was little traffic on the road that night. Deputy Hutson easily spotted the SUV and performed a traffic stop. As a result of the stop, Mr. Salinas was discovered in possession of cocaine.

The trial court denied Mr. Salinas's suppression motion. The court reasoned that prior to stopping the SUV, Officer Hutson had a "reasonable suspicion to believe the vehicle contained an individual, possibly armed with a knife, that had been involved in the altercation at the [Gaslight]." Clerk's Papers at 68-69.

Mr. Salinas's case proceeded to a one-day trial, with jury deliberations beginning around 3:40 p.m. After about an hour of deliberations, the jury submitted a question. The trial judge issued a response after consultation with counsel. As he wrote up the response, the trial judge stated, "I will ask our bailiff to inquire of the jury how much additional time they intend to deliberate, understanding that we don't want to influence the length of their deliberations but we also want to know what we're in for." Report of Proceedings (Aug. 13, 2018) at 119. Mr. Salinas did not object. The jury reached a guilty verdict approximately 20 minutes later, at 5:06 p.m.

Mr. Salinas appeals.

No. 36326-1-III
*State v. Salinas*


ANALYSIS

*Suppression motion*

A traffic stop is a warrantless seizure that must be supported by reasonable

suspicion of criminal activity. *See State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833

(1999). An informant's tip can supply reasonable suspicion. *See State v. Z.U.E.*, 183

Wn.2d 610, 618, 352 P.3d 796 (2015). But to be viable, the State must prove the tip

was reliable. *Id*. Relevant considerations include the informant's truthfulness and basis

of knowledge. *Id*. at 620. Known citizen informants, calling into 911 to report

contemporaneous events, are generally considered truthful. *Navarette v. California*,

572 U.S. 393, 398-400, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). But truthfulness,

alone, is not sufficient to justify a stop. An informant must also provide a sufficient

factual basis for believing that the person to be stopped has been engaged in criminal

activity. *Z.U.E.*, 183 Wn.2d at 622-23.

When assessing the validity of a suppression ruling, we review the trial court's

factual findings for substantial evidence, and legal conclusions are reviewed de novo.

*State v Howerton*, 187 Wn. App. 357, 364, 348 P.3d 781 (2015).

The parties here dispute whether the tips relayed to 911 operators were sufficiently

reliable to justify a stop of the SUV. Mr. Salinas argues against reasonable suspicion,

5

relying solely on the testimony presented at the suppression hearing. The State responds

by pointing to information set forth in the CAD report. Neither party clarifies whether the

CAD report is appropriately considered as part of the record, given that it was not entered

into evidence. We need not resolve this lack of clarity. Regardless of whether one looks

solely to the testimony from the evidentiary hearing, or the evidentiary hearing in

combination with the CAD report, the stop of the SUV was supported by reasonable

suspicion.

The testimony at the suppression hearing indicated that, at the time of the stop, law

enforcement knew an occupant of an SUV had recently been involved in a fight and also

possessed a knife. This provided an adequate basis of knowledge, linking the SUV and

criminal activity. In addition, the officers' testimony was sufficient to support the

informants' truthfulness. Although the officers did not specify whether the 911 callers

were identified or anonymous, the circumstances indicated the informants were relaying

contemporaneous information, as it occurred: the suspect with a knife was seen in a fight,

the suspect then left in a white SUV, and the SUV turned southbound onto George

Washington Way. Deputy Hutson apprehended the SUV immediately after the events

described by the informants, while the SUV was still headed south on George

Washington Way. Given the totality of these circumstances, the testimony was sufficient

to establish the informants' reliability.

The CAD report confirms the existence of reasonable suspicion. According to the CAD report, several individuals called into 911 about the fight, only one of whom was anonymous. Although the anonymous caller was the one who provided the most detail about the SUV, and was the only one who made allegations about a knife, the information logged by 911 operators in the CAD report support the anonymous caller's reliability. The CAD report makes clear the anonymous caller was recounting events as they occurred. In addition, the anonymous caller's information was consistent with information supplied by identified callers. Given these circumstances, the totality of the information supplied to 911 operators was sufficiently reliable to support reasonable suspicion.

*Jury deliberations*

Mr. Salinas contends the trial judge impermissibly interfered with the jury's deliberative process by asking the bailiff to inquire about additional time for deliberations. We disagree. Given the hour of the day, it was appropriate for the trial judge to broach the subject of whether the jury intended to deliberate after regular court hours or recess until the next day. Nothing about the judge's limited inquiry indicated the

7

jury should end deliberations or reach a verdict within a specific timeframe. Mr. Salinas's unpreserved claim of jury interference does not merit reversal of his conviction.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

8