IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80416-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CARLBERG, JUSTIN ALLEN, | ) | UNPUBLISHED OPINION |
| DOB: 09/30/1991, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Justin Allen Carlberg appeals his conviction for possessing a controlled substance with intent to manufacture or deliver. Carlberg argues that we must reverse his conviction because officers seized evidence during an unlawful detention. We conclude that the totality of circumstances supported reasonable, articulable suspicion for officers to seize and detain Carlberg. We affirm.

FACTS

In September 2016, Deputy Evan Twedt of the Snohomish County Sheriff's Office was working as a patrol officer for the city of Snohomish as part of the city's regional contract with the sheriff's office. At the beginning of his night shift on September 17, a sergeant told Deputy Twedt that the Snohomish Visitor Center had experienced multiple trespassing incidents. The Snohomish City manager had signed a letter authorizing the Snohomish Police Department "to

Citations and pin cites are based on the Westlaw online version of the cited material.

enforce criminal trespass in the second degree" on city property. The sergeant asked Deputy Twedt to "keep an eye on the visitor's center."

At around 11:50 p.m., Deputy Twedt drove by the visitor center. The back area of the building was "dark" and "well concealed" by "tall shrubs" and plant beds that surrounded the "whole area." He drove into the parking lot where he could see the back of the building and its covered porch, and saw two people standing on the sidewalk near the short ramp that leads to the porch. When Deputy Twedt pulled up, his headlights illuminated the two people and one of them stepped toward the ramp. Then they both started walking toward the front of the building. As Deputy Twedt started to get out of his car, he saw a third person standing at the corner of the porch, who looked to be speaking to somebody out of sight on the porch. Deputy Twedt "thought [he] was dealing with at least three, potentially four plus people." Deputy Twedt stepped out of his car and told the two people walking away to stop and show their hands.

Deputy Twedt immediately recognized Carlberg from previous "arrests and trespasses in other locations around the City of Snohomish." He knew from those contacts that Carlberg "has been trespassed from a lot of major businesses around Snohomish" and that he "often carries knives and other similar weapons." During the previous contacts, Carlberg often "made furtive movements with his hands, inside [his] pockets." Deputy Twedt told Carlberg to keep his hands out of his pockets. Carlberg at first complied but then started reaching into his pockets and "looking around side to side," as if "trying to get a lay of the land to see what's going on to either attack or flee."

2

Because Carlberg refused to keep his hands out of his pockets, Deputy Twedt told him to place his hands on the top of his head and asked him if he had any weapons. Carlberg admitted to having a knife. Deputy Twedt then conducted a "pat down" of Carlberg, looking for weapons. During the frisk, Deputy Twedt saw a zippered pouch strapped to Carlberg's chest that was "sticking out" from under his jacket. Deputy Twedt had "seen people with small firearms and knives, which could . . . easily have fit inside this pouch." He unzipped the pouch while it was still strapped to Carlberg and saw several baggies of suspected heroin and methamphetamine. Deputy Twedt arrested Carlberg for possessing a controlled substance. Later testing confirmed the white and brown substances found on Carlberg were heroin and methamphetamine.

The State charged Carlberg with one count of possession of a controlled substance with intent to manufacture or deliver. Carlberg moved to suppress "any evidence" seized by Deputy Twedt during the "pat down." The court denied his motion. It concluded:

> Based on the totality of the circumstances, particularly the signed agreement between the City of Snohomish and Snohomish Police Department, the time of night, the Center was closed, the expectation that no one should be present, the presence of four individuals who all reacted furtively to the arrival of Deputy Twedt, Deputy Twedt had a reasonable and articulable suspicion that the individuals were committing Criminal Trespass in the Second Degree.

Carlberg stipulated to a bench trial based on "agreed documentary evidence," including the affidavit of probable cause. The trial court found him guilty as charged. The court granted Carlberg's request for a residential drug-

3

offender sentencing alternative (DOSA). But Carlberg violated the conditions of his sentence, so the court revoked the DOSA and imposed a standard-range sentence of 16 months' confinement.

Carlberg appeals.

## ANALYSIS

### Findings of Fact

Carlberg challenges several of the trial court's CrR 3.6 findings of fact entered after the hearing on his motion to suppress. We review the trial courts findings of fact for substantial evidence. State v. Fuentes, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Carlberg argues the court erroneously found that "Deputy Twedt's sighting of the third and fourth individuals occurred before his detention of Carl[ ]berg on the sidewalk." Substantial evidence supports the trial court's finding.[1]

Deputy Twedt testified that when he pulled up to the visitor center, two people, one of them later identified as Carlberg, were standing "on the sidewalk" just "outside of the back patio." When his headlights shined on them, "they both moved to the front of the building" and "started walking towards the front." As

---

[1] Carlberg also alleges the court erroneously found that he "reacted with guilty knowledge to the deputy's arrival, trying to hide in a way an innocent person would not." This amounts to a disagreement with an inference the court reached from the evidence rather than a challenge to a finding of fact. Carlberg also challenges as an erroneous finding the trial court's reliance on the letter from the Snohomish City manager giving police permission to enter city property to enforce trespass laws in reaching its conclusion that reasonable suspicion supported his seizure. This is a challenge to the court's conclusion of law, which we address below. Because we conclude substantial evidence supports the court's findings of fact and those findings support its conclusions of law, this argument fails. Fuentes, 183 Wn.2d at 157.

soon as he saw the two people start to walk away, he started to get out of his car, and then saw another person standing "right on [the] corner" of the porch. After seeing the third person, Deputy Twedt called out to Carlberg and the second person to stop and show their hands. While the record is unclear as to when Deputy Twedt saw the fourth person, substantial evidence shows that Deputy Twedt knew there were at least three people on the premises before he detained Carlberg.[2]

Unlawful Seizure

Carlberg claims the court erred in denying his motion to suppress because Deputy Twedt lacked reasonable suspicion to seize and detain him for investigation. We disagree.

In reviewing a denial of a motion to suppress, we review the trial court's conclusions of law de novo. Fuentes, 183 Wn.2d at 157. We also review the constitutionality of a warrantless stop de novo as a question of law. State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

Warrantless seizures are per se unreasonable and prohibited unless they fall within certain narrowly drawn exceptions. CONST. art. I, § 7; State v. Arreola, 176 Wn.2d 284, 292, 290 P.3d 983 (2012). The State bears the burden of proving that a seizure falls within one of these exceptions. State v. Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015). One exception allows an officer to briefly

---

[2] The affidavit of probable cause supports Deputy Twedt's testimony. He states in his report that "I saw a third male standing behind some bushes and quickly walk out of my view on the porch as if hiding from me. I got out of my vehicle and ordered the two males walking away to stop. I then announced for anyone else behind the building to step out. Two more males emerged."

detain a person for questioning without a warrant if the officer has reasonable suspicion that the person is or is about to be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Fuentes, 183 Wn.2d at 158. A valid seizure under Terry requires reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the seizure. Terry, 392 U.S. at 20-21; Fuentes, 183 Wn.2d at 158.

In evaluating the reasonableness of a seizure, we look to the totality of circumstances known to the officer when the seizure occurs. Fuentes, 183 Wn.2d at 158. "Factors courts will look to in a totality of the circumstances analysis include, among others, the detaining officer's experience and training, the location of the investigatory detention, and the suspect's conduct." State v. Johnson, 8 Wn. App. 2d 728, 747, 440 P.3d 1032 (2019). "[T]he question is whether the specific facts that led to the stop would lead an objective person to form a reasonable suspicion that [the individual] was engaged in criminal activity." State v. Weyand, 188 Wn.2d 804, 812, 399 P.3d 530 (2017).

Here, Deputy Twedt seized Carlberg to investigate whether he was trespassing on city property. "A person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another." RCW 9A.52.080. "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). "Premises" include "any real property." RCW 9A.52.010(3).

6

When Deputy Twedt seized Carlberg, he knew that the visitor center was experiencing problems with trespass activity. The activity was so common that the city manager signed a written request asking the Snohomish Police Department to enforce criminal trespass laws on city property. Deputy Twedt also knew that the center's operating hours were 9:00 a.m. to 5:00 p.m. and that when the center is closed, "the doors are locked, lights are off, and no staff employees are on the premises." At 11:50 p.m., Deputy Twedt saw two people standing around the back of the visitor center. When his headlights illuminated them, they "started walking in ways appearing to find a way to get back into the dark." Deputy Twedt got out of his car and ordered the people to stop. He then recognized one of them as Carlberg. Taken together, these facts support a reasonable suspicion that Carlberg was unlawfully on the visitor center's property.

Carlberg argues that walking away and acting startled by Deputy Twedt's headlights does not alone support reasonable suspicion that he may be engaged in criminal activity. Carlberg is correct that flight alone cannot justify a seizure. State v. Howerton, 187 Wn. App. 357, 375, 348 P.3d 781 (2015). But the court may consider flight a factor in determining whether reasonable suspicion exists. Howerton, 187 Wn. App. at 375. Here, Carlberg's presence with others late at night and next to a closed, secluded building known for recent trespassing activity, coupled with his furtive behavior, supported Deputy Twedt's suspicion of criminal activity.

Carlberg also argues that an officer cannot detain a person to investigate whether they are trespassing unless a building displays a "no trespassing" sign or the person was previously "warned" about trespassing on the property. He cites State v. Blair, 65 Wn. App. 64, 827 P.2d 356 (1992), in support of his argument. But Blair does not hold that formal notice is needed to detain a person for suspicion of being unlawfully on the premises of another. In that case, we determined that even though an officer had a reasonable basis to believe the defendant knew he was trespassing because the officer had admonished the defendant not to be on the property, the police lacked probable cause to arrest the defendant for possession of narcotics. Blair, 65 Wn. App. at 70-71.[3]

Here, the totality of the circumstances justified briefly seizing Carlberg to investigate whether he knew that his presence at the visitor center was unlawful. See State v. Duncan, 146 Wn.2d 166, 179, 43 P.3d 513 (2002) (an officer need not have evidence supporting all elements of a crime to support an investigative detention); State v. Guzman-Cuellar, 47 Wn. App. 326, 331, 734 P.2d 966 (1987) (suspicious nature of activity may be considered in conjunction with time of

---

[3] In support of his argument, Carlberg also cites a recent unpublished case from this court, State v. Keza, No. 79650-0-I (Wash. Ct. App. Mar. 23, 2020), https://www.courts.wa.gov/opinions/pdf/796500.pdf, review denied, 196 Wn.2d 1002, 471 P.3d 224. In that case, Keza was sitting on a sidewalk next to a closed restaurant while charging a cell phone at an open outlet in a strip mall. Keza, No. 79650-0-I, slip op. at 1-2. Although the restaurant had a "no trespassing" sign visible in the window, the area was open and accessible to the public, and other businesses in the strip mall were open to the public. Keza, No. 79650-0-I, slip op. at 1-2. We concluded that police officers lacked reasonable suspicion to seize Keza for investigation of criminal trespass due to insufficient information that Keza did not have permission to sit on the public sidewalk. Keza, No. 79650-0-I, slip op. at 11. In contrast, Carlberg stood on a sidewalk behind a freestanding, closed business. The record shows the area was secluded, and there were no other businesses nearby or open to the public at that time.

occurrence; an officer need not determine the absence of a defense to a crime before an investigative seizure).

Deputy Twedt had reasonable, articulable suspicion supporting his detention of Carlberg to investigate the crime of criminal trespass. We affirm.

WE CONCUR:

9